OPINION OF THE COURT
Louis B. York, J.
This decision grapples with a struggle for the ownership and publication of the contents of “Schindler’s List.” As much of the public knows from the book and the movie, both titled *593 “Schindler’s List,” by use of the List setting forth the names of his Jewish employees, Schindler was able to save hundreds of them from the death camps and ovens of the Holocaust.
Facts
The court, having issued a temporary restraining order barring the sale and publication of the List’s contents, now addresses the instant motion for a preliminary injunction for the same relief. According to plaintiffs affidavit, in the autumn of 1993, Schindler’s suitcase was discovered containing thousands of photos and documents, including the List of employees that Schindler presented to the S.S., stating that they were necessary to assist in his war effort of manufacturing ammunition for the German army. The List is now at the Holocaust Museum Yad Vashem in Israel.
Another List was found in the boxes of materials collected by an author named Keneally. This List was given to Keneally by Leopold Pfefferberg, a worker in Schindler’s factory and depicted in the movie as the person who brought new recruits to Schindler for inclusion in the List. While differing slightly from the List at Yad Vashem, it is considered authentic, and is the object of this lawsuit.
When Schindler died, his wife, Emilie, was declared to be his sole heir. After Schindler died, Emilie met plaintiff Marta Erika Rosenberg, then an author of several books about Schindler. They became good friends and, during their relationship, Emilie assigned the contents of the suitcase, including the List, to Rosenberg. When she died, Emilie left a will nominating Rosenberg as her only heir.
The defendant is Gary Zimet, a principal of codefendant M.I.T. Memorabilia, a dealer in historical items. It appears that one Nathan Stern was given an original Schindler’s List from his uncle who was Schindler’s accountant. Stern then retained defendants to seek a buyer for the List.
Defendant’s Contentions
The defendants then tried unsuccessfully to sell the List in the open market. Plaintiff then contacted defendant and demanded that, as the heir to Mrs. Schindler, she was the owner of the List. Defendant offered to sell her the List, challenging her claim to ownership.
Defendant claims that he does not intend to publish the contents of the List, only to sell it, which does not violate plaintiffs copyright. But he argues, even if the contents were *594 published, no right belonging to plaintiff would be violated because the contents of Schindler’s List have been made known around the world, which would eviscerate any copyright originally possessed by plaintiff.
Discussion
There has been no registration of the List with the Federal Copyright Office. However, plaintiff may be entitled to a common-law copyright, which is the right of first publication (Pushman v New York Graphic Socy., 287 NY 302 [1942]). A copyright is separate and distinct from ownership. (Id.) This common-law right ends when a writing is distributed (i.e., published) to the public (Chamberlain v Feldman, 300 NY 135 [1949]). Ownership of a document does not automatically carry with it the common-law copyright (Pushman v New York Graphic Socy., supra). Nevertheless, a sale of all rights to an artistic work by the owner will ordinarily include the right not only of ownership, but also the common-law copyright, unless the owner reserves the right of ownership to himself or herself (Greenfield v Philles Records, 98 NY2d 562 [2002]).
In this case, the parties’ submissions contain no bill of sale as existed in the cases cited. It is not clear whether the accountant who gave the List to Stern possessed the ownership or publication rights to the List. Therefore, it is unclear whether Nathan Stern acquired the publication rights and, accordingly, whether the right to publication was acquired by the defendants. Here, Chamberlain v Feldman (supra) provides some guidance. When the famous author Mark Twain died, the manuscript to a work of his was not among his effects. It was found years later and the defendant sought to have it published. The Court of Appeals held that since there was no record of any sale, it could not be concluded that there was any transfer of the right to publish. In this instance, there is also no record of any sale, and no indication of whether Nathan Stern and, therefore, the defendants acquired the copyright to the contents of Schindler’s List. Also, the record is wholly conclusory as to what the contents were of the lists that were purportedly published around the world, as defendants contend. This leads the court to conclude that it is inconclusive that the contents published in those lists are the same as the contents in this Schindler’s List.
Defendant Zimet has filed a sworn statement with the court that he does not intend to publish the List, but only to sell it on behalf of his client. Plaintiffs justification for preventing the sale is her ownership of the copyright. That is the only basis of *595 denying him the right to sell. But if he does not intend to publish the contents, the sale will not violate the copyright.
Accordingly, the sale should be able to go forward, meaning that plaintiff cannot show the likelihood of ultimate success on the merits, depriving her of a preliminary injunction (Global Merchants v Lombard & Co., 234 AD2d 98, 99 [1st Dept 1996] [“In the case at bar, the preliminary injunction should not have been issued because Global failed to establish a likelihood of success on the merits”]).
Based on the foregoing, it is ordered that the temporary restraining order is vacated, and it is further ordered that this motion for a preliminary injunction is denied.